veterans at this so you know the rules about the mic and so forth. And it's my understanding that each side has waived their uninterrupted time so that you're free to take your welcoming questions as soon as you say may it please the court. Is that correct? All right. Okay. That said, we start with S.G.E. Management. Mr. Hope. Good morning, your honors, and may it please the court. The district court acknowledged that there are valid economic reasons why a rational person would join Stream Energy, namely to make money. The district court nevertheless certified this class on the theory that a rational person would not do something illegal to make money. Now we submit that the panel majority is right, that people are absolutely willing to do all kinds of things to make money. Moreover, there's actually an even easier way to deny class cert. According to plaintiff's own amici, as well as the panel dissent, the law is very unclear in this area, very unclear as to what is legal and what is illegal. That even, quote, experienced law enforcement agencies don't know the difference between legal and illegal in this space. Under this view, if we accept that view, this is not a case of indisputable illegality, but rather a case of legal risk, of some percentage chance that a court might find something illegal. Now, surely we certainly agree with the majority, but surely we should all agree that rational people make business decisions based on all kinds of risk, including legal risk, every single day of every week across this country. Accordingly, this RICO fraud class action cannot be certified, and it certainly cannot be certified at this time, not based on this record. As the panel majority notes, a rational person really could do any number of things to make money. That includes businesses that are indisputably illegal. It also includes—we would say it certainly includes—businesses that are merely debatable, that we think are debatably legal. And I'll take each of those two fact patterns in turn, if I may. First, with respect to clear illegality, if I may try to invoke the same hypothetical that I invoked during the panel argument, imagine that I were to offer you a business opportunity to sell designer handbags. I tell you that they are real. They are legitimate handbags. I am lying to you. I am committing a fraud, because they're actually fake handbags. So it would be illegal for me to sell them to you, and it would be illegal also for you to resell them on the street. Are we seriously suggesting that no rational person would undertake this business of reselling fake handbags? All you have to do is walk down the streets of Manhattan, and you know that obviously rational people are willing to do that, because they can make money. Is there any record evidence that there were such rational people in this case? Is there any record evidence that there were rational people in this case who knowingly joined it, understanding it was a fraudulent enterprise, as alleged? Well, what the record reflects is the following. First of all, obviously it's their burden of proof, and what the record reflects in this case is that people would make money. They are submitting essentially a logical inference. They're trying to draw a logical inference that notwithstanding the fact that people could make money, people would nevertheless not do it because there's some legal risk. We would submit that there is no such logical inference. To be fair, neither side has evidence on this specific illegal question. Remember what they were arguing below. In the district court, what they were arguing was that causation isn't required at all, that they don't have to prove reliance at all. That was their theory. So it's essentially the opposite of this notion that there is evidence. They were arguing that there was no evidence required. Why are we worrying about rationality and reliance? And let me give you a specific legal question. In sandwich chefs, which you relied on significantly, there is a state— Put your mic around, please. The pervasive issues of individual reliance that generally exist in RICO fraud actions create a working presumption against class certification. As I read Bridge and as I read our Allstate, that proposition can't stand. Do you not agree? Why does individual reliance exist at all in a civil RICO case after Bridge? Well, I certainly agree with—let me make two points here. One, I understand completely why you're asking the question. I understand why they're making this argument, because they can't satisfy the individual reliance standard. So they have no choice, in my opinion, but to get rid of the element altogether. What I would submit is this, Your Honor. You have to look at Bridge as well as Allstate. Bridge says two things, right? Bridge says, yes, first-party reliance, or indeed any reliance, is not an element. It's not a formal element of RICO, of RICO causation. You have to have what's instead direct causation. But Justice Thomas, for the unanimous Supreme Court, immediately then proceeds on to the next point, which is you will not have direct causation if you have a situation where there is no reliance or where there is knowledge of the truth. In that setting—and, of course, that makes sense. It would be a sea change in fraud law to say that they could come into—sorry. No, that's correct. So causation is disproven by knowledge. And that gets to the question, I think, the record-specific question Judge Costa may have been asking. What is the evidence in this record that people knowingly joined an enterprise that had a payment structure that meant that recruits would only make compensation if they continued to find more recruits that were a finite number? And so the market saturates. That's the Peter-Robs-Paul theory. How was that disclosed when people knowingly accepted that? Well, I think there are several things I need to respond to in Your Honor's question. One is it is emphatically not the case. It is undisputed that you can make money from this business purely by selling energy. Their own expert witnesses testified to that. And, in fact, as we saw that in our brief, moreover, the only named plaintiff left in this case— This cast is a class of only people who didn't make money. Actually, that's not true. They have that—there is a flaw. That whole question of whether they made money or not just begs the question, doesn't it? Because you don't know who made money or not when you're alleging everybody lost money, except this 14 percent. You don't know, right? Well, and particularly, Your Honor, I think the reason you're correct is people—this isn't—you can compare this to an annuity. People continue to make money over time. So even if people have not necessarily made money as of 2013, people could have made money—in fact, a lot of people, a lot more people made money since the trial record data in this case. Importantly, though, this class action isn't even limited to people who did make money. So at a minimum, I think they conceded that point, that that's an error. Our submission, of course, is that there's an even broader error. Mr. Ho, I have two questions. The first one is wouldn't your no rational person standard doom class certification in every single pyramid scheme case? Oh, not at all, Your Honor. Not at all, Your Honor. In fact, in a bona fide genuine pyramid scheme situation, as they've noted, in a genuine illegal pyramid scheme, you're destined to have saturation. We've been in business for over 10 years. People are continuing to make money. But if you have a bona fide pyramid scheme, not only is it possible to certify the class, it's going to be inevitable that you're going to be able to certify a class. Because if it's a bona fide pyramid scheme, you will reach a point of saturation. And at that point, the task for the plaintiffs is very simple—present evidence, present an economic expert, present somebody some evidence to indicate what is the date or range of dates at which point the situation has become saturated. It's no longer possible to make money. And all you have to do is set a class period starting on that date, and going forward, everybody in that class theoretically could be certified. The problem here, of course, is not only have they not tried, saturation is emphatically not the theory. It's not their theory. It wasn't the district court's theory. It's not the panel dissent's theory. Their class period begins the day this began. If you take the allegations in this case and substitute for stream energy, Avon, ACN, Mary Kay, Amway—none of which is that Amway underwent investigation for a long time, I know—why couldn't a class be certified in any of those cases? I think Your Honor is exactly right. Their categorical rule would certify all of them. I do want to make sure I've answered the bridge question because I think we got cut off there. There's knowledge and there's reliance. The burden to prove—so it's not just knowledge, but there's also a reliance factor. The burden to prove causation is on the plaintiff. And that specifically under bridge is direct causation, and the Supreme Court specifically indicates that you don't have direct causation if you have a situation of a nonreliance or knowledge of the truth. With regard to our circuits test versus this 10th, the 11th, and the 2nd circuits test, which I believe you would agree are easier for the plaintiffs to avoid the showing of actual reliance, would you believe that—would you state that even under the 10th, the 11th, and the 2nd circuits test that you would prevail in this case, or would you say it would need to be remanded? I'm talking about the showing—the avoidance of the showing of actual reliance that you would typically have to make instead to proceed with circumstantial proof of— I understand completely where you're coming from, Your Honor. We would strenuously submit there is no circuit split here. There is a principle that all the courts accept, which is that RICO fraud class actions are often not certified because you have independent reliance. However, if you can show common theories of reliance, if you have evidence of commonality, or if you have a logical inference, some reason to believe that, you know what, at a common trial, you will be able to do this, then yes, in that case, you absolutely could certify. A pyramid scheme that was, in fact, saturated would be, I would think, relatively straightforward to certify. What's interesting about these cases—CGC, Clay, Food Service—I want to mention another case. The most recent case in this space from a court of appeals is the Sargent's case, 806 F. 3rd. 71. All these cases speak from the same page of the hymnal. It's a strong standard. No rational person would be able to—would be interested in investing in a particular program. And if that's true, then you would be able to certify. So the classic fact pattern is essentially a math problem. If you're essentially having—if you have a fact situation where class members are essentially paying $10 to get nothing back or $20 to get $10 back, that sort of pretty commonsensical math problem gives you a logical inference that, you know what, unless you tell me something else, unless the defense proves something else, then you would assume that the plaintiff has discharged their burden to show predominance and would proceed to class. That's not this case. There is no math problem in this case. Their own expert witness concedes that people can not only make money from this, not only late joiners can make money, not only people who joined after this lawsuit was filed and were clearly on notice, but you can even do it without recruiting a single person. So in other words, without regard to the allegedly illegal aspect. Mr. Coe. Can you give us some—help me in deciding commonality versus an exception to the rule? I mean, in every class, I think it's difficult to have an absolute class. There's always going to be some people that are not eligible or made money or knew what they were getting into. Where do we draw the line as far as commonality is concerned for a class? I understand the question. There is this Halliburton sort of de minimis concept. We have absolutely no quarrel with the notion that we're not talking about some sort of de minimis extreme situation. This, of course, is not de minimis. We're talking about 14 percent of the people who did, in fact, make money, including people who joined after this complaint was filed. I do want to go back— Talking about that, I'm a little confused because I thought the plaintiffs had said the class was for those who lost money and the court certified a class for everyone. Do we have that situation? Yeah. You have two errors in this case. One, they've conceded, which is the class has actually been defined improperly. The class actually is not limited to people who are injured. So at a minimum, you should vacate for that reason alone. There is a second, more fundamental problem, which is just because you're injured—yes, injury. I get that injury is one element. We're not talking about injury as the element here. We're talking about causation as the element. And if you are—even if you were lied to, we obviously emphatically believe that this was a lawful multi-level marketing. I don't think it was even a close call. But even stipulating that as a common issue, that that's a common issue, you still have to answer the causation question, individualized causation. And our submission is, like in the typical RICO fraud class action setting, different people have different risk tolerances, different economic opportunities. They would have different reactions, which means we have to ask each person. I'm wondering about the district court found, and I think correctly so, that everybody's being recruited by specific people. And so it's maybe not a good analogy, but I've bought Girl Scout cookies I didn't want just because of who asked me to buy them. And so here, people may just say, well, I want to help out my brother or I want to help out my friends. So, you know, maybe I'll make some money, maybe I won't, but I'll help out by buying into this venture. And to me, that's very different from the class that's being posited here. So tell me what your thoughts are on that. I think Your Honor is exactly right that there are—that people would have done this. Just because they lost money doesn't mean they didn't think that they could have made money. And, of course, that would be a completely irrational belief because people did make money. But they may not have cared, is I guess what I'm saying, if they were just trying to help out their son or their brother or their next-door neighbor. Absolutely. It's more expensive than Girl Scout cookies, but that same kind of—it's not so outrageously expensive that you couldn't do it just to say, well, maybe I'll make money, but maybe I'll just help out my friend here. Absolutely right. I found myself in the same boat. Judge Haynes's question raises this point as well. There's some 150,000 to 200,000 IAs. They had the responsibility to sell to other people the same scheme that they themselves had become involved in. Or to sell energy. Well, I understand. Right. But they have the responsibility to do that. So you've got 150,000 people out there talking among themselves and making their individual sales pitches, trying to get another 100,000 to be interested in this scheme, and somehow we say there's a common representation about why people joined the scheme. 150,000 people. That is a third-party representation, I suppose. But what effect does that have upon the reliance, the commonality of reliance? I think it shows that reliance is emphatically individualized for any number of reasons, both economic, as Your Honor is alluding to, and potential non-economic reasons. Mr. Ho, doesn't your answer to Judge Haynes conflate the concept of motivating factor with precondition? The precondition is that it's legal. After that, there are a number of motivating factors, like the Girl Scout cookies. I'm not sure why that should matter, because ultimately there are people who think that the commonality is that it's legal, and that's a precondition before you ever consider why you're going to participate or buy the cookies. I have two answers, Your Honor. One is there is absolutely no evidence in the record whatsoever that people would not— there's absolutely no evidence in the record whatsoever, none, that people would not do businesses that can either make money or have these other benefits simply because there is some legal risk associated. And as Your Honor's dissent pointed out, this is not a clear illegality case. This is some percentage chance that a business might be declared illegal. Has SCREAM been investigated by the FTC or by the State or by any regulatory agency? Not at all, Your Honor, and that's for one simple reason. When you contrast this case with the cases where the FTC or the State AGs or the SEC does bring action, the economics are basically the opposite. If you look at Burn Lounge and Costco and these other cases, the percentage of revenue or profit that these businesses get from the recruiting fees is in the high 90s. Here, the numbers are exactly the opposite. SCREAM Energy gets 97% of its revenues not from IA fees, but from the sale of energy. In fact, the profits come from the sale of energy. The IA program is a net expenditure. If TXU wants to hire Tony Romo for $20 million to go on TV and market, that's great for them. We've chosen to hire 100,000 IAs and pay them the $20 million or whatever the number is in any particular year as a marketing expense. Tell me how this is really different from the stock cases where the allegation is that the company made misrepresentations about how the company is doing or some other misrepresentation. There's a really close question of whether it's a misrepresentation or not. We don't know whether it's a misrepresentation until we have the trial. Isn't that what we have here? We don't know whether this was illegal yet until it's tried. The Supreme Court in Halliburton said that some individualized questions of reliance from the likely small number of stock purchasers who knew about the misrepresentation is unlikely to defeat the predominance. Why isn't that true here? This Court has already said that it's not true here because this is not a securities case. This is a RICO fraud case. I think it's a summit case, but certainly this Court has made clear that that fraud-in-the-market securities theory has absolutely no bearing outside the securities context. They are not even arguing for this presumption. If the class certification is allowed to stand and the case goes back, wouldn't you have an opportunity to argue that your scheme isn't an illegal one? And if, in fact, the determination is that it wasn't illegal, do you purvey? Yes, and that would be true in an individualized trial as well. Both sides were already ready to go to individualized trials. You have an opportunity to do the same thing if the class certification is allowed to stand. Isn't that right? Absolutely right. Either way, we will have the opportunity to get to the merits. Of course. Judge Clement had a question. Mr. Howell, I just had a follow-up to the inquiry that Judge Jones was making as to whether the company had been investigated by any federal agency. No, not accused, certainly not convicted, but not even accused. The only allegation of illegality comes from this lawsuit. That's correct, Your Honor. Mr. Howell, I know that you, of course, approve of the result of the panel majority opinion, but I want to ask you about what you think about the panel's discussion and how it got to where it did or whether it could have been framed in a way that was more favorable to your client. It seems to me that the panel majority adopted such an aggressive version of your argument that it really was suggesting that the record evidence so strongly reflected the possibility that STREAM was a pyramid scheme that it was likely that many individuals signed up in the hope of becoming small-time fraudsters themselves. Is that a fair characterization of the record and of your position? On the merits, we emphatically believe this is not a pyramid scheme. The numbers suggest precisely the opposite, much like the innocent companies that Judge Jones alluded to. I read the majority, though. I have no quarrel with the majority at all. I think the majority is right because it was entertaining one hypothetical theory. There are multiple scenarios where people would have joined this. Knowledge of the alleged misrepresentation, non-reliance, they did their own investigation, potential non-pecuniary reasons, people who wanted to just sell the energy and had no interest whatsoever in the recruiting side of the business, the hypothetical illegal business they had no interest in, such as their own named plaintiffs, such as their own experts conceding that people could have made money simply by selling energy. And so if this is an illegal pyramid scheme, but you participate only in selling the energy product, then you wouldn't be doing anything illegal, and that would be rational, even if we indulge this presumption of people only do lawful things. Precisely. To put our court out of business is people only do lawful things, but that's another subject. Mr. Hill, I wanted to follow up on Judge Davis's question about Halliburton. And you said, well, that's a securities fraud case, fraud on the market. But isn't the point in Halliburton when Chief Justice Roberts says some anomalous class members who have individualized issues does not necessarily defeat predominance? The Supreme Court said the same thing this term in Tyson's Food, which is an FLSA case. So that's not a securities fraud principle. So how do you get around the point of class action law that a small number of anomalous individualized class members does not defeat predominance, especially on this record where we don't know if there's any, let alone the actual number of people who knowingly entered into a criminal enterprise? Respectfully, those are two extremely different cases. Let me address each in turn. Halliburton, we accept the de minimis exception. This is not de minimis with 40 percent. Halliburton is a securities fraud on the market presumption case. Not only has this court rejected the principle that that would apply anywhere else, I would submit it's such a radical departure in the law to say that now every pyramid scheme case is all of a sudden subject to per se classification. That is such a radical concept that even they have not made this argument. The panel dissent nor the district court made this argument. As to Tyson Foods, Tyson Foods says quite explicitly that when you have common evidence to establish a common pattern, for example, in that case it's about damages, about getting an expert witness to talk about how much time it takes to don and doff, that's something where frankly expert testimony would probably be superior to an individualized testimony. It's something that's verifiable, quantifiable, the amount of time it takes. This is subjective. How does anybody know, how does an expert know what each plaintiff would have known if they had a Girl Scout cookie hypothetical or they only wanted to sell energy like this particular case? You're calling it a de minimis exception. I haven't seen that in any case law, point me to any that does categorize it as de minimis from the Supreme Court. But if it is de minimis, what's the standard? What's the percentage of a class that you think is de minimis? I'd be delighted to answer that. But to answer your question as well as Judge Elrod's, if you look at the case law on this, these are the cases that talk about the standard. Sargents, you don't certify class action for fraud by a pharmaceutical company, a failure to disclose liver failure, pretty compelling, much more compelling fraud frankly than this case, alleged fraud. You don't certify that case, and they didn't certify, because the drug was not, quote, so dangerous that no reasonable physician would have prescribed it. I'll note that Sargents was written by the same judge who wrote the food service case. CGC, no rational economic actor would have done this. In fact, the behavior was so extreme it cannot be explained in any way, no explanation possible other than reliance. In Clay, you have to have evidence that each individual plaintiff actually relied. There was a systematic underpayment of what they were owed, which is why they certified. Food service, same thing. As in Clay, each plaintiff must prove reliance. Again, they were being systematically overcharged. Negrete, no rational class member, no rational senior had any reason to do so, no reason to do so other than reliance. It's a, quote, high bar. Sargent says this is a difficult area, very difficult to certify. What is the evidence of the percentage? Because that's one thing I wanted to know. Judge Costa asked, well, what if it's de minimis? What is the evidence on how many of these people, the 150 or 200,000, attended seminars? I mean, is there any way of breaking down how many people could have relied on something other than just the appearance? Well, I think the simplest thing that's available in the record is that, and they admit this, 14% of the people made money. And that, by the way, is based on data in 2013. This is like an annuity. People continue to make money. But your argument is that, on your argument about the various reasons for investing, is there any evidence that we could say, well, there are X people in the category that were helping their friends or family, X people wanted energy, X people attended seminars. I mean, is there some way we can figure out how much of the class cannot even, would be subject to cross-examination discovery about why they actually relied? I see my time is up. May I answer? Oh, absolutely. Go ahead. Thirty-second answer. Remembering that their theory below was that causation reliance wasn't required at all. They were making a legal argument that they didn't need any evidence whatsoever. Despite that, there is evidence in the record that 14% of the people made money. So we would submit, based on that, there's no logical inference that people wouldn't do that. Now, if the court wants to give them a second bite at the apple, we could have a remand proceeding where even more evidence is produced. That is not difficult. Why isn't that the best option, to take your remand option at the back of your brief? Why isn't that the best choice here? Okay. Thank you. I'm here all day. We appreciate it. I think that is absolutely, absolutely an option that is available to the court, to vacate and remand to give them a second bite at the apple. I don't think a second bite is necessary, given that they don't dispute. Their own expert witness admits that you can make money doing this, that you can even do it without doing any recruiting whatsoever. So given all that, they've conceded away, I think, their case. But if you want a remand just for the sake of simplicity, certainly that is an option available to the court. What you should not do is affirm. All right. Thank you, Mr. O. You've reserved rebuttal time to come back up after. So let's hear from Mr. Citron. All right. You're up. Thank you. May it please the court. The holding we seek is narrow. We ask you to hold that class certification is appropriate in a pyramid scheme case, at least where, as here, the plaintiff's theory depends entirely on proving the existence of a common, inherently deceptive scheme. And as the district court found in an unchallenged finding, the defendants introduced no evidence whatsoever showing any individual issues, respecting any particular plaintiffs and what they knew. In that case, the common fraudulent scheme and its existence becomes the predominating common question. No, and with that, what you ask us to do, in my view, is to conclude that reliance, that we have to make an inference for reliance, that the plaintiffs inferred reliance from an unspoken words that it was a legitimate deal when the business plan that was presented to them clearly showed every indicia that you have argued is an illegal scheme to begin with, because you have argued that an illegal scheme is one that is immediately illegal if the pyramid scheme shows that you make your money by recruiting instead of by selling and that it requires somebody to pay into the right to sell. And both of those things are quite obvious and are obvious in your briefs. I mean, you just continue to say that the business plan of STREAM fares horribly on every relevant metric court's regulators in use to identify illegal pyramid schemes. You say every indicia of pyramid scheme was in the business plan that was furnished to all these people, and yet you ask us to rely on an inference, opponent inference, that they made a representation that was never made, that it's not in the illegal business scheme. Judge Ali, I totally understand your question. It's going to take me a minute to explain why, but I think that your position suggests that you should vote with us. Okay. Okay. What's going on here is that there is a lot of evidence that they are, in fact, a pyramid scheme, but the settled law in every single court, and they don't challenge it, they don't even talk about it, is that knowing those factors doesn't allow lay people to figure out that the scheme is an illegal pyramid scheme in which they or the people below them must lose money. That's settled law. It's not challenged. I understand, but I'm just saying that the ordinary person who read his business investment in this case would see those very things are spelled out specifically, that you're not going to make any money selling. This is not really a selling deal. You're supposed to go down and recruit IAs, and that's the way you're going to make your money. That is an illegal pyramid scheme. I agree. That's proof of an illegal pyramid scheme. And that was given to all of the plaintiffs. The law is that individuals do not see those details and realize that— The law is that an investor is not required to make some reasonable investigation with respect to his investment? The FTC has determined this is not challenged. Every single federal court agreed that that structure is inherently deceptive. Hold on. Let him try to— It's inherently deceptive. There is no argument from the other side that rational people could have determined that this was a pyramid scheme from the evidence presented, and this is the second part of my answer. They are disavowing this argument. They don't think STREAM is a pyramid scheme. They don't think it's possible any person knows that because they think that's not true. You can't decertify this class on the basis of an argument they are rejecting out of hand. The thing that bothers me is that all of the information that it was illegal is in the hands. That is the representation made. There is an actual representation made in this case, and it is in these documents. But you ask us to infer a representation that was never made that contradicts what was in these documents. So you've got your allowance is opposite of what was before them to rely on. That's what I can't understand. I think the representation that is legitimate is not only made every single day. It's being made in this court to every single judge in this court. But there is not one single case of a pyramid scheme that has ever succeeded on the theory that you are alleging, and that is the sole representation, the sole representation that it was not a pyramid scheme. As far as we know and as far as either side has cited, every single private pyramid scheme case in history has succeeded as a class action. And it's on this theory that the scheme is inherently fraudulent, that it harms everybody in the same way. And so the common predominating question, and this gets to Judge Prado's question, the standard is predominance. The predominating question is the fraudulent nature of the scheme or not. I have the same question I have to opposing counsel. Why are we, in my mind, confusing this entire analysis with talk about reliance? And more importantly for you, the majority says you conceded that individualized reliance is necessary to find causation. Did you anywhere in the record concede that? No, we certainly did not. In fact, they say repeatedly that this was our predominant argument in the district court. But the majority says you conceded this issue. No, all we did is we defended the position that the district court adopted, which was that we could show individualized reliance. We, in fact, pointed out in our brief, and we cited again in our supplemental brief, that RICO cases should be easier than other fraud cases to certify precisely because the question is causation and not reliance. And I would point out that all state is decided after the panel decision in this case. And so while Mr. Ho's reading of bridge was possible before all state, that is that the world is divided into first party reliance and third party reliance, and your case has to be one or the other, all state rejects that position in terms. Mr. Citron, I have a serious question about what you intend to gain out of this lawsuit because your allegation is that 150,000 IAs each wasted $329, and that's their measure of damages essentially, right? Well, from what you allege or what I read in your briefs, you say STREAM only made $4 million last year. Are you trying to put STREAM out of business? I don't know the answer to the question how much money. How will anybody ever get any damages at all if you put STREAM out of business? And if you don't want to put STREAM out of business, then your whole theory is contrary to what you're telling us about illegal pyramids. So as Mr. Ho indicates, one of the things of value that STREAM has been deriving from its IAs is that they sell energy accounts, and STREAM makes a lot of money on those energy accounts by selling them at retail and buying them at wholesale. It's not a huge amount of money. For a long time, it was actually negative. But, you know, they've raised the price of energy slowly on people. My question, sir, if they are an illegal pyramid scheme, shouldn't a public agency be investigating them or the U.S. Attorney or the FTC and put them out of business? Like several that you were citing in your briefs? The short answer is they will have some money to make the class members somewhat whole. That's true in all these pyramid schemes. And with respect to public regulatory action, which is what I think what you're asking about, it is the case that those agencies have very few people who are working on this issue. They routinely come in after the schemes start to collapse. And there is still every prospect that this case, that STREAM will be investigated by the agency. I happened to find an article from the New York Times last September about the ongoing investigation of Herbalife and the ongoing investigation of some other company. And I'd like your reaction because it quotes, it starts off with a provocative statement, I called the FTC and they would not answer my question. What was the question? Please define an illegal pyramid scheme. Herbalife's been investigated for 18 months. A consent judgment has been issued in some other case. They quote a gadfly for Herbalife. Why aren't you shutting Herbalife down? FTC has no answer because they have no official definition of a pyramid scheme. That being the case, how can we certify an action premised on the certainty, or you know, that this is some kind of illegal scheme? Leaving aside what the New York Times article that's not in the record says, I will tell you that the FTC does have a definition. You can find it in the Costco test. And the definition involves whether or not recruiting predominates. And that's not a close question on this record. As Judge Jolly recognized, there is tons of evidence in this case, purely common evidence, that STREAM is a pyramid scheme. I would ask you to look at the 3-in-10 business model. Counsel, let me ask you this. In order for you to prevail in the district court in your class action, do you have to prove that it was either a fraudulent scheme or an illegal scheme? Are you still going to be required to prove that in order to prevail on your claim? Undoubtedly. And, in fact, the only thing we can prevail by showing is that it is an inherently illegal pyramid scheme. We can't show that they made individual fraudulent. Can you determine now whether it's illegal or fraudulent, or is that a matter for the trial court? No, it's a matter for the trial, with the exception, of course, that the defendants do get to argue at the Twombly stage or otherwise that you shouldn't proceed to class certification because there's no plausible evidence that this is a pyramid scheme. They didn't make that argument because, as Judge Jolly noted, there is a mountain of evidence in this case that it's an unlawful pyramid scheme. I'd like to answer Judge Haynes' question about the Girl Scout cookies because I think it's important. And I like Girl Scout cookies, but you know what I'm talking about. No, and I think that's important, actually. I don't want a bunch of Girl Scouts mad at me. Imagine that your niece came to you and said, instead of would you buy these Girl Scout cookies, look, I'm selling stolen Girl Scout cookies. I got them because I stole them from a friend. Can I sell them to you for $5? Obviously, that would have a material impact on your decision. I think it's quite reasonable for a jury to infer that you would not have bought the Girl Scout cookies if you knew that they were stolen or poisonous or had some other material aspect that would affect your decision. This is exactly what Judge Wiener is asking about when he says, isn't it a precondition that it be legal? And this is what they're asking you to accept here, that people who wanted to help out their friends wouldn't have made a materially different decision if this were truthfully held out as the illegal pyramid scheme that it is. Your counsel opposites point that there's a legal risk kind of situation. I mean, we have people that take aggressive tax positions, for example, that might end up being proven to be illegal, but they take these aggressive tax positions nonetheless. Quite intelligent people, and we've seen that recently, that allegation made. So why wouldn't we factor in the fact that people take risks, people are willing to do stuff, et cetera, et cetera? For sure. What I would say is Sandwich Chef itself asks you to look at the way the case is actually going to be tried. You could imagine a pyramid scheme case in which the scheme is held out as legally risky. It says, look, this is a close issue. The FTC isn't sure what constitutes a pyramid scheme. We ask you to look very closely at the nature of the scheme before you make a decision. But I'd ask you to look at Appendix B of our supplemental brief, because all we've done is reprint the income statement that they are required to put every year. And what you will see is a massive disclaimer that you can make money. They will say, we won't promise you that it's possible to make money, but we do promise you that we stand on our integrity, that this is an honest, lawful enterprise, and that we expect you to conduct yourself well. But they are selling energy, right? They will be selling energy, that's right. In other words, if I bought this energy from my friend or whatever, as opposed to buying into the company, but I just bought the energy, I get the energy, right? Yeah, but you wouldn't be a class member or victim in that case. No, I understand that. But I'm just saying it's not just something that's feeding on itself and there's no product there. There is a product. I mean, that's true of every pyramid scheme. And I just want to point out that this point that some people made money so we can't have a class because it's possible that someone joined, believing they would make money, that's true of every single pyramid scheme. And it's true also of every case that they fight. I just want to be clear. CGC Holding, Humana, Food Service, there are people there who were better off because they participated. Excuse me, sir, but Food Service says in relation to Bridge, while the Supreme Court has clarified the first party reliance is not an element of a RICO claim predicated on mail fraud, it may be, as it is here, a necessary part of the causation theory advanced by the plaintiffs. Yes, and then they say that it's possible to infer that reliance. You could infer it in Food Service because they were sending out artificially inflated bills and there was no representation whatsoever about, well, this bill may be inflated. My question is, how can, I'm sure you're a very on-the-up-enough lawyer, but if you are correct in your assertion that this is an illegal pyramid scheme simply by virtue of the fact, your allegation, that most people are signing up unaware of whether it's legal or not, why can't someone put Mary Kay Cosmetics and all those lovely ladies with their pink Cadillacs out of business, Avon out of business, ACN out of business? There are at least 60 multilevel marketing companies, according to Wikipedia, right now. Many of those multilevel marketing systems. Schemes. Schemes. They are schema. Many of the multilevel marketing systems, in direct reliance on the Amway decision from the FTC, adopt clear, bright-line, anti-pyramiding rules that would allow them to defeat such a claim and a motion to dismiss. They're unambiguous. They can offer refunds. That's the easiest thing to do. You took $329. I'm sorry, Judge. Isn't one of the answers to Judge Jones is that those that she names are making more money out of the cosmetics or the bread that they sell than they are from these passing down. IAs in those systems will only make money by making substantial retail sales. That's what the anti-pyramiding rules require. But the easiest way to defeat this kind of scheme... There is no rule. You cite one case, Coscott, which it's not a rule. It's an opinion, right? FTC has never issued guidelines on this. Judge Jones, I think we are at loggerheads. If you do not accept that the FTC's decision in Coscott is the rule and that it governs, there's nothing else I can tell you. Every single federal... I have a question. All right, let's circle back. I want to ask you about sandwich shift. In order for you to prevail, your side, must we overrule or tinker with our law in sandwich shift? What is your position about its control or influence or impact on what the in-bank court, since we're sitting in bank, addresses in this case? I don't want to ask you when you come back if you address that for me also. Go ahead. Sure. Let me make two points about it. First, you definitely do not need to overrule sandwich shift. What we'd like you to do is to adopt the same reading of sandwich shift that other circuits have adopted in order to cabin it and make it so that it's not going to swallow every possible class action. And that is that when you propound a theory that depends entirely on identifying a common fraudulent scheme, it becomes the defendant's burden to show that there actually are individual issues of knowledge or reliance in the case with some evidence rather than just speculation that there's some class member out there. That's exactly what the analysis in sandwich shift itself looks like. It's why there was this dispute about the 140 citations in the defendant's brief to factual evidence. Let me just clarify one point. I did read in your brief that you asked that sandwich shift should be overruled. That's in your in-bank brief. For sure. The court is sitting in-bank. I think sandwich shift clearly is contrary to bridge and relies quite heavily on the suggestion that individual reliance is an element of RICO, which it is not. Well, that's why I asked you the question so I can get you on the tape of exactly what is the view, whether or not you're asking that or not. Our position is clear. I think the court should, in fact, disavow that language from sandwich shift and the resulting presumption that there would be an issue with class certification in a RICO case because there is no individual reliance issue. But two limiting points are important to our position. One is that you don't need to overrule sandwich shift to find in our favor here. And the second is that that tinker with sandwich shift shouldn't change many cases, but it changes a few important ones because Mr. Ho's summary of Justice Thomas' language from bridge is incorrect. He does not say it's first-party reliance or third-party reliance and you won't be able to have a case if you don't have either. He says you probably need one or the other, but you don't actually need one or the other as a legal matter. And pyramid schemes are the rare species of fraud where the theory of causation doesn't depend on what one person relies on. I don't quite understand. I'm sorry, but I don't understand your suggestion that we don't need to overrule sandwich shift when you ask that we overrule sandwich shift. Why should we do it if you don't need it? That's all I'm... The court is sitting on bank. It has a precedent that is in direct contravention of a Supreme Court case. It would be a good time to clarify that that language from sandwich shift isn't any longer correct. But if you agree with sandwich shift, if you agree with its holding or its dicta, you should still find in favor of us in this case. That's all I'm trying to say. Is this an argument in the alternative? Yes. And the one point I was trying to follow through on is pyramid scheme frauds are special. They don't come from reliance. They come from a structural fraud in which it is inevitable that a class of people at the bottom have to lose money. And the defendant should expect to answer to those people when the fraud is found out. It seems to me if I understand your argument based on what you're saying in Allstate is that if it's a pyramid scheme, you've got proximate cause, period. Yes. All you have to prove is a pyramid scheme. That's correct. After Allstate, what we need to prove is that it's a pyramid scheme because a pyramid scheme as a legal matter, if we can prove it, is one that is inherently deceptive. So it's a fraudulent scheme for purposes of mail fraud and it causes the losses to the victims at the bottom inevitably. And you can ignore... Because it's in the nature of a pyramid scheme that that class of victims always... And you can ignore... Could I clean up one or two disputes? The class does not consist of anyone who lost money, who made money. We ask that the class be only those who lost money. That's what the class we will ask for in the district court. We disavow any broader definition and to the extent that that has to be corrected, I will just represent to you that we will ask the district court to correct it or this court to correct it. The only question I have is that you say that all you have to do in a pyramid scheme is to say that it's a pyramid scheme or make some sort of evidence with respect to that point and ignore Rule 23? No, we have to show that there is common evidence from which we will prove the existence of a pyramid scheme. If we can do that, then after Allstate, we will show an illegal pyramid scheme that's mail fraud and we will be able to show proximate cause because a class of victims inevitably results... But can I... Spurs are allowed. Can I follow up on that? Right. Accepting your argument that you're going to tailor it to people who only lost money and that if it's a pyramid scheme, there is causation automatically to people who lost money. Now, my question is it seems to me that there might be people in the category who lost money who it wasn't because there was an intervening cause which is they knew it was illegal and they did it anyway. Now, I don't know how many people of those people there are. It seems to me that the district court has to make some sort of reasoned calculation that notwithstanding that there may be some people who had an intervening cause, how many of those were there and what does the record say about that? That's exactly right. And to the extent that I've forgotten to say that at points, you should understand that to be a critical premise of our argument. At every turn, it's critical that the district court made a finding here that they didn't produce any evidence of any such person who knew it was a pyramid scheme, for example, and decided to join. They have two... I'd like to answer Judge Arnold's question. They have two opportunities to make that... It's not their burden. I'm asking you affirmatively, the district court can't worry now, certify now, worry later. The district court is obliged under our rules to make an affirmative finding of predominance, which ultimately puts the burden on you. What is the evidence on how many people in, as you say, the class, as it should have been defined, had pure causation, there was no intervening causation, they were damaged directly because of the pyramid scheme, direct damage? The evidence is that there are hundreds of thousands of people who joined on the representation that's a legitimate business when we say it's, in fact, a pyramid, an illegal pyramid scheme. There is the... For example, how many people... What's the evidence on how many people saw the 2000... whatever year it was, the Dallas Morning News article, the other publications that were out there? I mean, there's some evidence floating out there that people, even though they might have gone in thinking it was a legitimate business scheme, either were told in particular meetings or read in the news that, no, this is a pyramid scheme. What is the evidence about how many people are in that potential situation? The only evidence we have is that every person who's been asked whether or not they knew it was a pyramid scheme has said no. How many people have been asked? They asked one of the two named plaintiffs. He said no, they didn't even put that evidence in front of the district court. They put eight IAs, filed an amicus brief here to say they don't think it's a pyramid scheme, they don't know one person who did, who does, or would have joined knowing that it was. We can't prove 300,000 people one way or another that there was no other thing that they relied on, but it's a legitimate inference. It's a logical inference. How many people were— If you'll stop talking for a second, sir. It seems to me that your argument suggests that under Sandwich Chef you should lose. I do believe that Sandwich Chef is consistent with Bridge because there are as many different kinds of mail fraud as can be conceived by the mind of man, and Bridge was a false bid-rigging scheme, which is quite different from this multilevel marketing, which Judge Lynch recognized in the food service case. So I think Sandwich Chef is consistent with Bridge, and Sandwich Chef says that in order to certify a class, you have to look at what the defendant would prove as well as the plaintiff. Now, omitting for the moment that you did not make any proof of individual reliance in the district court, which might counsel for remand, the defendants are entitled to make exactly the kind of proof that Judge Owen is referring to in order to show that there is not commonality in predominance. So that's consistent with Sandwich Chef. I agree with that. They're allowed to make that showing twice. They can make it at the class certification stage by showing that there is a legitimate issue about— But the judge already certified the class. Right. He certified it having made a finding that after years of discovery, they hadn't even attempted to develop evidence that there was anyone who knew it was a pyramid scheme. I mean, the burden can't be on us to tell them to develop the evidence, make an argument, and have it be insufficient. They had the opportunity. The judge found they didn't introduce this evidence, and that factual finding is unchallenged. It can't be an abuse of discretion to have relied on it. They will have another opportunity to prove at the merit stage that there are these unlikely individuals who knew. Any such individual can be excluded from the class. This is all about— This is what Halliburton and Tyson are all about. If we can make our prima facie showing based on common evidence, we can have a class action. And unless there is some substantial number of people for whom this will be a meaningful defense, that they knew it was a pyramid scheme, then class certification remains appropriate, and they can pick off individual class members through individualized rebuttal. The Supreme Court has said that three times in four years. It's not some passing statement from Halliburton or limited to securities cases. I do want to return to both Judge Elrod's question and Judge Prado's question. Judge Elrod, you asked, is this going to swallow class certification for all pyramid scheme cases and maybe even all class actions? The answer was, well, no, because maybe you could have a class action if there was saturation or something like that. Saturation isn't a situation where there's literally no one left to recruit, or it's impossible for anyone who joins to make a dollar or something like that. It's the situation that results when the natural number of people who are going to participate is reached, and you can't have the geometric growth to infinity that's necessary to have growth. That's been true in this case basically since 2006. The evidence is they knew that that was true in 2006, and they're telling the court the same story they've been telling... they started telling them. Perhaps where some actual misrepresentation is made, any kind of pyramid scheme can be certified as a class action. Perhaps. Here, there were no actual misrepresentations that you're relying on. The representations I'm telling you told you it was a pyramid scheme. An illegal pyramid scheme. The cases where a common theory abroad is found is one where there's usually a material omission. That's what constitutes the misrepresentation. Whoa, whoa, whoa. You're not saying that this is a case of omission. All of a sudden now are you? Sure we are. I thought you were saying it was a case of unspoken misrepresentation. Unspoken being the omission, that it's a pyramid, illegal pyramid scheme. I mean, I'm not changing my theory. This has been our point all along. You would have told people... I've never heard omission before, and that made me beat. If you don't, our view is it's deceptive not to tell people it's an illegal pyramid scheme. That's the view of Proscott and every federal court. But they didn't. They told you it was. As you define an illegal pyramid scheme. I think my point is it would, in fact, if that were the standard, that you could only have it after it had saturated in such a way that not one person could make money, and those are theoretical people who would make money, you would, in fact, swallow both all pyramid scheme class certifications, where every single one has been certified in the past, and most class actions that you could imagine. If we were inclined to harmonize sandwich chef, if not to overrule it, which one of the articulations is the best? I think in food service, you have a very concrete description of both the problem and the solution, which is you have to have a standard that can be met, where you recognize that if it's a common core scheme of law, you're not going to ask 250,000 people to use the exact same evidence to prove the exact same question again and again and again. And so what you look for is a situation where the common scheme of fraud is the predominating question, and the inference of reliance on it, or causation, you know, as Judge Cadogan says, the inference of causation from that is logical. Then it falls to the defendants to rebut that with some evidence that there really are individualized issues of knowledge for individual plaintiffs in the case. That's a fair standard. It's very easy to meet for both sides. You can have a concrete litigation about it. We're very happy to do that again in the district court if we really had to. Our point is only there were years of discovery in this case. There was a live class certification argument. These points that are being raised now, as though we should have introduced proof on them, they weren't made at all by the defense. The district court made a finding that there was no such contrary evidence. And at this point, that finding is unchallenged and it's totally fair to simply leave the class in place. Even if you do that, right, class certification is always susceptible to being reconsidered. If it turns out that the proof in this case is going to devolve into individual trials about whether people would have been willing to join simply to help out their family and utterly without regard to whether it was a lawful scheme or an inherently illegal scam, then we could have it. You could have a motion for decertification. All right, Mr. Citron, I have one last question. Give me a declarative sentence response. At the end of Mr. Ho's argument, he was discussing sort of his alternative or secondary position of potentiality of a remand back to the district court. Just give me a . . . what's your take on that? Would you have any position on that if the court were to . . . The proper disposition is to affirm the class certification. Well, that wasn't my question. But we are . . . I'm asking you . . . I understand it. I'm asking you only about that last proposition, not give me your main argument. Do you have a position on the remand or not? Not saying the court's going to do it. I just want to know. We are happy with a remand in part because our view is that at all stages of the case, we have to satisfy the court that class certification remains appropriate. All right. Affirmance is the better way to do that, but either way, we will have . . . I'll take it that there's a period at the end of that sentence. Thank you. Somewhere. All right. Thank you, sir. You've exhausted your time. Thank you for responding. Mr. Ho, you have five minutes rebuttal, sir. Four points quickly, Your Honors. First, their lead argument in their en banc brief, and they reaffirmed it today, is that there's an automatic rule. All they have to say is pyramid scheme, and you proceed immediately to class cert. Their lead case for that proposition is omnitritian. They argue this point on pages 22, 23, and 31 of their brief. But their lead case, omnitritian, says exactly the opposite of what they're trying to argue. In the very next paragraph of the opinion on page 788, let me just read it. Evidence that the defendants operated an illegal, inherently fraudulent pyramid scheme raises a material question of fact going to the first three elements, defendant's misrep, defendant's knowledge of falsity, defendant's intent. It does not go, and I'm not quoting here, but it's obvious what this court's saying, it does not go to the fourth and fifth elements, which is plaintiff's reliance and plaintiff's causation of resulting damages. So their case contradicts their entire argument. Mr. Ho, on reliance, following up on the questions about RICO causation and Bridge and our decision in Allstate, if you don't have to show individualized, first-party reliance, why isn't it enough to show that at least a sizable number of people joined this scheme on the belief that it was a lawful enterprise when it's not? I mean, if it's reasonable belief, some people rationally entered into criminal activity. It's got to be rational to believe at least some people entered into it on the false premise that it was lawful. If some people relied on that, why, I mean, that's third-party causation for all the plaintiffs. It caused the scheme to get perpetuated, which resulted in losses that are certainly a direct cause. So why doesn't that reasoning get the plaintiffs where they need to be, at least in showing a common issue of causation? They have to show reliance in this case because that's what this case is based on. And yes, if they have a common... What do you mean by that? If they have a logical inference... What do you mean this case is based on? Didn't they argue Bridge in the district court? Yes, that was their alternative argument that they're reviving. They didn't make it before the panel, which is why you all said that they abandoned the argument. But if they want to revive it, that's fine. It's wrong. I think we've already talked about why they're incorrect reading of Bridge. Just read it for any number of court of appeals that have rejected this argument, including the Sargent's case, 2nd Circuit, which was written by the same judge who wrote the food service case. They've said that every single Pyramid Scheme case has been certified. Not true. There's the Coe case, 137 FRD 252. But our point is, it's not a categorical rule either way. It's not always or never. Sometimes it's case by case. Second, they say that we have to admit that we're a Pyramid Scheme... Could you explain one more time why you say this case does require reliance? Why does this case require reliance as opposed to a breaking causation? Well, because as the Supreme Court explains in Bridge, when you have a lack of reliance, you have knowledge of the truth, that breaks the chain of causation when you have a fact pattern like this. Yes, is it theoretically possible that you might have a RICO fraud case that doesn't look like this? Yes, that's not this case, Your Honor. That's what Justice Thomas is trying to say. All State isn't contradicted, and they were incorrect. All State came before this Court's opinion in this case, not after. I do want to make a point, though, that they say that we either have to admit that we're a Pyramid Scheme, or we have to class certify. In other words, heads I win, tails you lose. It's a nice rule for them. It's not the law. We get to argue in the alternative. We get to contest misrep, and we get to contest causation. That's how fraud law works. Third, there's been some talk about burden of proof, and I really want to make sure we have a clear consensus on the burden of proof issue. It is their burden of proof. Now, they can invoke a logical inference of common causation if they want, but make no mistake, they keep moving the target here, all right? Their argument below, as we've just said, was bridge. They don't have to do anything about causation at all. It's automatic in these cases. If it's automatic, then that's contradicted by omnitrition. We shouldn't... Mr. Hove, you don't seek us to rely on this new evidence that's been presented in the 28J. You don't seek us to rely on that for your case, do you? Two points. One, we should win based on the record below. If you wanted to remand, then you certainly could have additional evidence. Right now, we shouldn't consider new evidence. We don't need it to win, Your Honor. We don't need it to win. And when they keep moving the target, when they haven't discharged the burden of proof, we shouldn't affirm when the whole premise of class action, the whole danger of class action, is the enormous threat of punishing innocent defendants through the interim pressures to settle, notwithstanding the fact that you're innocent. Finally, there is no logical inference in this case. This is a legal risk pattern at most. If I may, just to give you two examples. Judge Haynes has already addressed the example of businesses that do tax strategies that have a non-zero legal risk. I think that's a great example, whether it's tax or NHS or any number. Let me mention one other example. If you recall the case of MGM v. Grokster, the Supreme Court effectively declared Napster and Grokster to be illegal enterprises. The district court in the Ninth Circuit had upheld them. Are we seriously saying that nobody in the tech industry would have rationally invested and operated these businesses because there was a legal risk? Not only did people do it before, they did it after. That's all we're saying here, Your Honors. People can entertain legal risks, which is all that this is at the very most. I'll give you a wrap-up sentence if you want it, or you don't. My wrap-up sentence would be, I don't think remand is necessary, but it appears to be a consensus that remand, vacated remand, would be a fine result. And since the record is such a mess, if they want to finally figure out what exactly their theory is, we'd be happy to rebut it. All right. Thank you, Mr. Ho. Thank you, counsel, both sides, for briefing and argument. The case will be submitted.